IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARY V. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05cv298-VPM |
| | ) | [WO] |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary V. Harris ["Harris"] filed this action seeking review of a final decision of the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g) (2000). Upon review of the record and the briefs submitted by the parties, the court finds that the Commissioner's decision should be affirmed.

## I.  FACTS AND PROCEDURAL HISTORY

In September 1999, after two previous, unsuccessful attempts to obtain Disability Insurance Benefits, Harris filed the application at issue in this case and claimed to be disabled as of 28 March 1996 due to arthritis in her ankles and right shoulder as well as asthma (R. 96).  Harris is currently 68 years old, and she has previous relevant work experience as a licensed practical nurse ["LPN"] (R. 68, 109-116).

Harris's application was denied initially and upon reconsideration, and a hearing before Administrative Law Judge ["ALJ"] Steven L. Carnes resulted in an unfavorable

decision (R. 36-39; 17-33).  The Social Security Administration's Appeals Council denied Harris's request for review, thus rendering the ALJ's opinion the final decision of the Commissioner (R. 6-8).  Harris then filed this timely lawsuit.

## II.    STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," *Kelley v. Apfel*, 185 F.3d 1211 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).[1]  This is true despite the existence of substantial evidence "contrary to the findings of the ALJ." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles*, 84 F.3d at 1400 (citations omitted).

---

[1]       In *Graham v. Apfel*, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

### III.   DISCUSSION

***A.    Standard for Determining Disability***

An individual who files an application for Social Security disability benefits must prove that she is disabled, which means that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (2000); *see also* 20 C.F.R. §§ 404.1512(a) (2005).

The regulations governing disability determinations provide a five-step sequential evaluation process that the ALJ must follow to determine whether a claimant has proven that she is disabled.  *See* 20 C.F.R. §§ 404.1520; *see also **Ambers v. Heckler***, 736 F.2d 1467, 1469 (11th Cir. 1984); ***Williams v. Barnhart***, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002). If the claimant is not currently engaged in substantial gainful activity, the ALJ must determine whether she suffers from a severe impairment that has lasted or is expected to last 12 months or more.  §§ 404.1509, 404.1520(a)(4)(i)-(ii).  If so, and the impairment(s) is of such severity as to meet or medically equal a condition described in the SSA's "Listing of Impairments," then the claimant will be found to be disabled.  §§ 404.1520(a)(4)(iii); 404, subpt. P, app. 1.

If the claimant's severe impairment(s) does not automatically qualify her for disability benefits, the ALJ must then assess her residual functional capacity ["RFC"], which represents

"the most [a claimant] can still do despite [her] limitations." § 404.1545(a). Considering her RFC, the ALJ must determine whether the claimant is able to perform the physical and mental demands of her past relevant work. § 404.1520(a)(4)(iv). If not, the ALJ must determine whether, considering her RFC, age, education, and past work experience, the claimant is capable of performing other jobs available in significant numbers in the national economy. §§ 404.1520(a)(4)(v), .1560(c).

**B.    *Application of the Standard: The ALJ's Findings***

After thoroughly and correctly discussing the legal standards and evidence in the record, the ALJ made the following findings:

1.    The claimant met the disability insured status requirements of the Act on March 28, 1996, the date the claimant stated she became unable to work, and continued to meet them through December 31, 1998.

2.    The claimant has not engaged in substantial gainful activity since March 28, 1996.

3.    The medical evidence establishes that the claimant has reactive airway disease, arthritis, and hypertension but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 CFR Part 404, Appendix 1, Subpart P.

4.    The claimant may experience some moderate pain and shortness of breath, but the claimant's allegations of symptomatology to an extent that would have completely precluded work activity prior to December 31, 1998, are not credible.

5.    As of December 31, 1998, the claimant had the residual

4

functional capacity to perform sedentary work (20 CFR 404.1545).

6.  The claimant is unable to perform her past relevant work.

7.  The claimant's residual functional capacity for the full range of sedentary work is reduced by limitation to occasional balancing, kneeling, stooping, and crawling; complete restriction against exposure to dust, fumes, gases, and marked changes in temperature and humidity; limitation to occasional work around unprotected heights and moving machinery; limitation to occasional operation of motor vehicle equipment; restriction to indoor work; and moderate pain.  She can use her hands for simple grasping, pushing and pulling of arm controls, and fine manipulation; can use her legs for pushing and pulling of leg controls; and can frequently reach overhead.

8.  As of the alleged onset date, the claimant was fifty-eight years old, which is defined as advanced age.  As of the date her insured status expired, she was sixty-one years old, which is defined as closely approaching retirement age (20 CFR 404.1563).

9.  The claimant has a high school education and training as a licensed practical nurse (20 CFR 404.1564).

10.  The claimant has acquired work skills, such as following detailed instructions, taking detailed records, and pulling files, which she demonstrated in past work, and which, considering her residual functional capacity, can be applied to meet the requirements of skilled or semi-skilled work functions of other work (20 CFR 404.1568).

11.  Considering the claimant's residual functional capacity for sedentary work and the testimony of the vocational expert, 20 CFR 404.1569 and Rule 201.07, Table No. 1 of 20 CFR Part 404, Appendix 2, Subpart P, direct a conclusion that she was not disabled at any time through December 31, 1998.

5

> 12.   Considering the range of work which the claimant was still functionally capable of performing as of December 31, 1998, in combination with her age, education, and work experience, she could have been expected to make a vocational adjustment to work which exists in significant numbers in the national economy. Examples of such jobs are: out-patient admitting clerk, with 1,500 such jobs existing regionally and 224,000 nationally; medical voucher clerk, with 4,600 jobs existing regionally and 322,000 nationally; and phlebotomist, with 1,400 jobs existing regionally and 123,000 nationally.

> 13.   The claimant was not under a "disability" as defined in the Social Security Act, at any time through December 31, 1998 (20 CFR 404.1520(f)).

(R. 32-33).

Thus, Harris failed at step five because the ALJ determined that, despite being limited to sedentary work, her acquired skills would transfer to jobs available in significant numbers in the national and regional economies.  Harris disagrees and contends that the ALJ's decision is not supported by substantial evidence.  Specifically, Harris contends that the ALJ's reliance on the testimony of a vocational expert ["VE"] was erroneous as was the ALJ's failure to consider "how [her asthma] treatment impacts her ability to work" (Doc. # 12-1, pp. 10-18).

## C.   *The Vocational Examiner's Testimony*

Harris first contends that the ALJ erred when he found that she could perform the

work of a phlebotomist (Doc. # 12-1, pp. 10-11).  The Dictionary of Occupational Titles

["DOT"], on which the Commissioner largely relies for job descriptions, *see* Soc. Sec. Rul.

00-4p, describes the job of a phlebotomist as requiring the ability to perform "light" work.

DOT, 079.364-022 (4th ed., rev. 1991), *available at* http://www.westlaw.com (search

"DICOT" database for "079.364-022").  The ALJ expressly limited Harris to sedentary work,

however (R. 32-33).

It is not necessary for the court to address this issue, however, because, relying on the

testimony of the VE, the ALJ also found that she also could perform the primarily clerical

duties of an outpatient admitting clerk, which the DOT describes as "sedentary."  DOT,

205.362-030, *supra*.  Although Harris contends that this conclusion is similarly erroneous,

the court disagrees.

After stating his opinion that Harris had performed her responsibilities as an LPN "as

they're generally performed in the national economy," the VE testified that Harris had

acquired the following clerical skills:  "following detailed records, recording detailed

information, working with files and records, working, taking messages and working on the

phone, contacting various departments that might need to be contacted" (R. 405-06).  This

description, Harris contends,

> bears no resemblance to that in the DOT.  Where the DOT
> description shows the LPN principally works with patients, the
> VE refers only to clerical tasks.  He gives no basis for describing
> this job differently than it is described in the DOT, so it would
> be error for the ALJ to accept the VE testimony.

(Doc. # 12-1, p. 15).

Harris's suggestion to the contrary notwithstanding, the VE's testimony set forth merely the clerical skills he viewed as typically acquired by an LPN, and he did not attempt to provide an exhaustive description of an LPN's responsibilities (R. 405-411).  It is not necessary for the Commissioner to demonstrate that the claimant can perform a job that incorporates all of the skills acquired through her previous employment.  Clearly, such a requirement would eliminate the need to evaluate a claimant beyond determining whether she could return to past previous work.

Harris's contention that the VE's testimony actually conflicts with the DOT's description of an LPN's responsibilities is also unpersuasive.  She fails to direct the court to the language in the description that would require such a conclusion and, instead, implicitly invites the court to conduct its own linguistic analysis of an abbreviated excerpt from the DOT that she submitted as evidence (Doc. # 12-3).  Having done so, the court concludes that the VE's testimony does not conflict with the DOT.

In relevant part, the DOT states that an LPN provides medical treatment in a variety of settings,

> [t]akes and records patients' vital signs . . . [, o]bserves patients and reports adverse reactions to medication or treatment to medical personnel in charge . . . [, a]dministers specified medication . . . and notes time and amount on patients' charts[, a]ssembles and uses such equipment as catheters, tracheotomy tubes, and oxygen suppliers[, c]ollects samples . . . [, r]ecords food and fluid intake . . .[,] answers patients' calls[, m]ay inventory and requisition supplies . . ..

(Pl's Ex. B, Doc. # 12-3, p. 1).

Considering that the DOT description provides only a summary of the maximum responsibilities of the job as it is generally performed, Soc. Sec. Rul. 00-4p, the court finds that skills listed by the VE fall squarely within the DOT's description of an LPN's responsibilities.  Although the description does not use the term "file" or "files," it clearly subsumes the following of written and verbal instructions, compiling of medical records, communicating on the phone and reporting to superiors.

Harris also contends that the VE's testimony was erroneous because the job of an outpatient admitting clerk is not sufficiently similar to that of an LPN.  Again, the court disagrees.

According to the applicable regulations, the Commissioner will find someone of Harris's age who is limited to sedentary work to have transferable skills only "if the sedentary work is so similar to [the claimant's] previous work that [she] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."  20 C.F.R. § 404.1568(d)(4); *see also* Soc. Sec. Rul. 82-41.

Again, as support, Harris relies exclusively on the DOT's description of the responsibilities of an LPN, which the court has already found to be consistent with the VE's testimony.  Moreover, the DOT notes that both the LPN and the outpatient admitting clerk positions require the same level (medium) of "aptitude ability" in the area of "clerical perception," and both require "significant" "compiling," which the DOT describes as "gathering, collating, or classifying information about data, people, or things.  Reporting and/or carrying out a prescribed action in relation to the information is frequently involved."

9

*See* DOT, *supra*.

Significantly, on cross examination by Harris's attorney, the VE testified that, with respect to the LPN and clerical positions, the "work setting's the same, [and] most of the tools would be the same," which he later clarified to mean that the transition from an LPN position to the other jobs he identified would require "very little, if any, vocational adjustment" (R. 410-11).  Harris offers no reason to conclude otherwise.  *See* Soc. Sec. Rul. 82-41 ("[W]here job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC.").[2]

D.      **The ALJ's Consideration of Harris's Asthma Treatment**

Harris contends in conclusory fashion that the ALJ failed to consider the effect her asthma treatment has on her ability to work (Doc. # 12-1, p. 17-18).  This argument is without merit.

The ALJ's discussion of the medical evidence in the record was exemplary for its thoroughness.  Moreover, the ALJ explicitly considered all of Harris's subjective allegations,

---

[2]It is also worth noting that Harris did not bring the alleged conflict to the ALJ's attention, which is puzzling considering that Harris now contends that the VE's testimony was "facially absurd" (Doc. # 12-1, p. 16).

including those related to her prescribed treatments, and, correctly applying the Eleventh Circuit's standard for evaluating subjective complaints, found that her complaints were not worthy of belief because they were not supported by the record.  *See*, *e.g.*, **Wilson v. Barnhart**, 284 F.3d 1219, 1225 (11th Cir. 2002).  Perhaps the thoroughness of the ALJ's opinion explains the lack of specificity in Harris's argument as well as Harris's failure to direct the court to supporting evidence in the record.[3]

Harris does not challenge the ALJ's substantive conclusions beyond the arguments discussed *supra*, and an independent review of the record leads the court to conclude that the ALJ's thorough and thoughtful opinion is strongly supported by substantial evidence in the record.

## IV.   CONCLUSION

Therefore, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

DONE this 12th day of April, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE

---

[3]Harris cites only to a statement by her treating physician, Martin A.J. Wybenga, M.D., who testified at a deposition in 1997 that Harris "uses her breathing machine [nebulizer] on an every four-hour basis at the house *as needed* for her bronchospasm" (R. 339).  Dr. Wybenga's statement simply is not probative of a limitation on Harris's ability to work.  "[A]s needed" may mean never or daily.